J-S03018-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: D.R., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: A.A., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2742 EDA 2022 |

Appeal From the Order Entered October 12, 2022
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0001237-2021

BEFORE: BOWES, J., McCAFFERY, J., and SULLIVAN, J.

MEMORANDUM BY McCAFFERY, J.: **FILED MARCH 16, 2023**

A.A. (Mother) appeals from the order entered October 12, 2022, in the Court of Common Pleas of Philadelphia County, which: (1) adjudicated dependent her son, D.R. (born in August 2018) (Child); (2) found Child was the victim of "child abuse" pursuant to 23 Pa.C.S. § 6303 of the of the Child Protective Services Law (CPSL);[1] and (3) that Mother and R.R. (Father) were the perpetrators.[2] After careful review, we affirm.

---

[1] 23 Pa.C.S. § 6301 *et seq*.

[2] Father did not participate in this appeal and has not filed a separate appeal.

Kevin E. Cordero, Esquire, represented Child in the dependency proceeding as his Child Advocate. On January 3, 2022, Attorney Cordero filed a letter with this Court, stating that he did "not take any position on Mother's appeal of the [juvenile] court's decision relating to the adjudication of
*(Footnote Continued Next Page)*

We summarize the relevant facts and procedural history as follows. Mother testified that on November 17, 2021, she came home from work and placed her firearm inside her safe in the dresser drawer. N.T., 9/30/2022, at 104. Shortly thereafter, she left to pick up her mother from work. *Id.* at 105. Upon returning home, Mother "went straight over to wash some dishes" while Father took Child to the bedroom all three of them shared to get Child ready for bed. *Id.* at 40, 105. At some point, Father went back downstairs, leaving Child in the bedroom, when he and Mother heard a loud boom. *See id.* at 105; DHS Exhibit 4 (Color photographs of the house and arrest report). Mother and Father ran upstairs, found Child had been shot, and rushed him to Children's Hospital of Philadelphia (CHOP). N.T., 9/30/2022, at 105-106. Mother was interviewed by police, and charged with reckless endangerment, endangering the welfare of a child, and conspiracy. *Id.* at 51-53, 106-108. Mother was incarcerated for 21 days.[3] *Id.* at 108.

On the same day, the Philadelphia Department of Human Services (DHS) received a Child Protective Services (CPS) report regarding the incident. N.T., 9/30/2022, at 64-65. The report alleged that Child "was presented to CHOP" with a self-inflicted gunshot wound to the abdomen. *Id.*

_____

dependency of" Child. *See* Letter from Kevin E. Cordero to Joseph D. Seletyn, Esquire, 1/3/23, at 1 (unpaginated).

[3] The charges against Mother were later dropped. N.T., 9/30/2022, at 54, 108.

at 58, 66; DHS Exhibits 13-14, (CPS reports). The report further alleged repeated, prolonged, or egregious failure to supervise. N.T., 9/30/2022, at 66; DHS Exhibits 13-14, (CPS reports). Mother and Father were the named perpetrators, and Child was the alleged victim. N.T., 9/30/2022, at 65. DHS investigator, Denise Jenkins, interviewed Mother after her release from incarceration. *Id.* at 68.

As a result of the shooting, Child required surgery. N.T., 9/30/2022, at 58; DHS Exhibit 12 (CHOP medical records). He was diagnosed with bronchiolitis, a gunshot wound to the abdomen, a small bowel laceration, and a sigmoid colon injury, and remained hospitalized until December 3, 2021. N.T., 9/30/2022, at 58. On December 5, 2021, he was re-admitted to CHOP after he began experiencing pain, vomiting, and abdominal distention. *Id.* DHS certified Child's injuries as a "near fatality," and the CPS report indicated egregious failure to supervise. *Id.* at 67-68, 76.

On December 3, 2021, once Child was ready to be discharged from CHOP, DHS obtained an order of protective custody (OPC). The juvenile court held a shelter care hearing on December 6, 2021, where it lifted the OPC, and the temporary commitment was ordered to stand. DHS then filed a dependency petition on December 14, 2021.

On September 30, 2022, the juvenile court held an evidentiary hearing, at which time Child was four years old.[4] Child was represented by a guardian *ad litem*. DHS presented the testimony of Christopher Maitland, a detective at the Philadelphia Police Department; Denise Jenkins, a DHS investigator; Christine Peters-Tynes, a Community Umbrella Agency (CUA) case manager supervisor; and Gaelle Beck, a CUA case manager. Mother was represented by counsel and testified on her own behalf.

Detective Maitland testified that, from the bedroom that Child, Mother, and Father shared, he recovered two firearms, three empty firearm magazines, and one bullet projectile. N.T., 9/30/2022, at 26, 40, 42. One gun was recovered from the floor of the bedroom, and it was loaded with approximately nine rounds in the magazine. *Id.* at 27. This firearm did not contain a serial number; accordingly, Detective Maitland could not determine to whom the gun belonged.[5] *Id.* at 31. The other gun was in the second

---

[4] Pursuant to the Juvenile Act, if the child is in shelter care, the dependency hearing "shall not be later than ten days after the filing of the" dependency petition. 42 Pa.C.S. § 6335(a). The juvenile court initially scheduled the adjudicatory hearing for December 28, 2021, approximately two weeks after DHS filed the petition. Over the next nine months, the court continued the matter multiple times because, *inter alia*, Father's counsel was unavailable, it needed to receive criminal notes of testimony, and because the judge was unavailable.

[5] Detective Maitland testified that a firearm that does not have a serial number is often referred to as a "ghost gun," and "ghost guns" are primarily in the possession of individuals who "wouldn't ordinarily legally be able to possess a firearm." N.T., 9/30/2022, at 31-32.

drawer of a dresser. *Id.* at 34. This firearm was in a gun safe, but the safe was unlocked. *Id.* at 35-36. Detective Maitland testified that, based on the serial number, this weapon belonged to Mother and contained approximately four live rounds. *Id.* at 36. Detective Maitland subsequently determined that Child was shot with the "ghost gun." N.T., 9/30/2022, at 40; DHS Exhibit 10, (Firearms Report).

Mother testified that, initially, when the incident occurred, she believed her gun was used and that it was the only one in the home.[6] N.T., 9/30/2022, at 107. She stated she had no knowledge of the "ghost gun." *Id.*

Following the hearing, the juvenile court held its decision in abeyance to review the evidence and allow CUA to evaluate Mother's home. Thereafter, by order dated and entered on October 12, 2022, the juvenile court adjudicated Child dependent with supervision, ordered legal and physical custody of Child to Mother, provided Father visitation pursuant to "prison policy," found that Child was the victim of "child abuse" pursuant to 23 Pa.C.S.

---

[6] Counsel for the parties also made stipulations regarding the content of testimony that otherwise would have been provided by Police Officer Robert Stock, and Robert B. Lindell, M.D.

According to DHS's counsel, Officer Stock would have testified as an expert in firearms identification, and he would have identified the "ghost gun" as the gun that Child used to shoot himself. N.T., 9/30/2022, at 56-57.

DHS counsel stated that Dr. Lindell would have testified about the procedures performed on Child, diagnoses of Child's injuries, and Child's follow-up visits to CHOP. *Id.* at 58.

§ 6303, and that Mother and Father were the perpetrators. On October 27, 2022, Mother filed a notice of appeal and a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). The juvenile court filed a Pa.R.A.P. 1925(a) opinion on December 12, 2022.

Mother raises the following issues for our review:

1. Whether the [juvenile] court erred as a matter of law and abused its discretion when it made a finding of child abuse against [Mother?]

2. Whether the [juvenile] court erred as a matter of law and abused its discretion by admitting and relying on inadmissible testimony[?]

3. Whether the [juvenile] court erred as a matter of law and abused its discretion when it determined [Child] is a dependent child[?]

Mother's Brief at 8.

Our standard of review for dependency cases is as follows.

[T]he standard of review in dependency cases requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law. Accordingly, we review for an abuse of discretion.

*In re R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010) (citation omitted).

In her first claim on appeal, Mother avers DHS failed to provide clear and convincing evidence that she abused Child. Mother's Brief at 20.

Our Supreme Court has explained that, "a petitioning party must demonstrate the existence of child abuse by the clear and convincing evidence standard applicable to most dependency determinations. . . ." *In the*

*Interest of L.Z.*, 111 A.3d 1164, 1174 (Pa. 2015). This Court has stated that

"clear and convincing evidence" requires:

> that the witnesses must be found to be credible; that the facts to which they testify are distinctly remembered and the details thereof narrated exactly and in due order; and that their testimony is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue. It is not necessary that the evidence be uncontradicted provided it carries a clear conviction to the mind or carries a clear conviction of its truth.

*In the Interest of J.M.*, 166 A.3d 408, 423 (Pa. Super. 2017) (citation

omitted).

Section 6303 defines "child abuse" in relevant part, as "intentionally,

knowingly or recklessly[7] causing serious physical neglect of a child." 23

_____

[7] The CPSL refers to the definitions of intentionally, knowingly, and recklessly used in the Pennsylvania Crimes code, 18 Pa.C.S. § 302. Section 302(b) defines the terms as follows:

> (1) A person acts intentionally . . . if the element involves the nature of his conduct or a result thereof, it is his conscious object to engage in conduct of that nature or to cause such a result; [and] if the element involves the attendant circumstances, he is aware of the existence of such circumstances or he believes or hopes that they exist.
>
> (2) A person acts knowingly . . . if the element involves the nature of his conduct or the attendant circumstances, he is aware that his conduct is of that nature or that such circumstances exist; [and] if the element involves a result of his conduct, he is aware that it is practically certain that his conduct will cause such a result.
>
> (3) A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and

*(Footnote Continued Next Page)*

Pa.C.S. § 6303(b.1)(7). In addition, Section 6303 defines "serious physical neglect" as

> [a]ny of the following when committed by a perpetrator that endangers a child's life or health, threatens a child's well-being, causes bodily injury or impairs a child's health, development or functioning:
>
> > (1) A repeated, prolonged or egregious failure to supervise a child in a manner that is appropriate considering the child's developmental age and abilities.
> >
> > (2) The failure to provide a child with adequate essentials of life, including food, shelter or medical care.

23 Pa.C.S. § 6303(a).

The identity of the perpetrator of child abuse "need only be established through *prima facie* evidence in certain situations[.]" **In re L.Z.**, 111 A.3d at 1174. *Prima facie* evidence is "[s]uch evidence as, in the judgment of the law, is sufficient to establish a given fact, or the group or chain of facts constituting the party's claim or defense, and which if not rebutted or contradicted, will remain sufficient." **Id.** at 1185 (citation omitted). Section

---

unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and intent of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation.

18 Pa.C.S. § 302(b)(1)-(3).

6381(d) of the CPSL provides that evidence that a child has suffered abuse "of such a nature as would ordinarily not be sustained or exist except by reason of the acts or omissions of the parent or other person responsible for the welfare of the child" establishes *prima facie* evidence of child abuse. 23 Pa.C.S. § 6381(d).

The **L.Z.** Court held:

> [E]vidence that a child suffered injury that would not ordinarily be sustained but for the acts or omissions of the parent or responsible person is sufficient to establish that the parent or responsible person perpetrated that abuse unless the parent or responsible person rebuts the presumption. The parent or responsible person may present evidence demonstrating that they did not inflict the abuse, potentially by testifying that they gave responsibility for the child to another person about whom they had no reason to fear or perhaps that the injuries were accidental rather than abusive. The evaluation of the validity of the presumption would then rest with the trial court evaluating the credibility of the *prima facie* evidence presented by the [Children and Youth Services] agency and the rebuttal of the parent or responsible person.

**In re L.Z.**, 111 A.3d at 1185 (footnote omitted).

Returning to her first claim, Mother argues that DHS did not provide clear and convincing evidence that she perpetrated abuse against Child. Mother's Brief at 20. She contends that the evidence suggests she "had no knowledge of the ghost gun in the family home." **Id.** Mother further insists that she cooperated fully with police and maintained her innocence through the investigation. **Id.** at 21.

In finding that Mother was a perpetrator of "child abuse" as defined by Section 6303, the juvenile court stated that "clear and convincing evidence

was presented that [Child] suffered serious physical neglect while in Mother and Father's primary care." Juvenile Ct. Op., 12/12/2022, at 12. The court relied on the testimony of DHS Investigator Jenkins and Detective Maitland. *Id.* In its Rule 1925(a) opinion, the juvenile court stated the following:

> The injuries Child sustained while in Mother and Father's primary care are shocking. The evidence and testimony reflect that [Child] sustained a gunshot wound to the abdomen while in the care of Mother and Father. The incident was certified a near fatality. The indicated CPS report named Mother and Father as the perpetrators of child abuse based on serious physical neglect, which was demonstrated by their egregious failure to supervise their three-year-old child in a manner that was appropriate for his developmental age and abilities. Mother and Father's egregious failure to supervise [Child] placed his life, safety, and welfare in danger. It is this [c]ourt's opinion that Mother and Father failed in their duty to protect and prevent serious injury to [Child]. Their reckless conduct resulted in his near fatal injuries. It is this [c]ourt's opinion that Mother and Father failed in their duty to protect and prevent serous injury to [C]hild. . . .

*Id.* at 13. The juvenile court also determined that "[t]he ghost gun and Mother's firearm were accessible to [Child] and created a grave risk of harm if not properly secured or if [Child] was not properly supervised. Mother and Father were home [during] the incident and left [Child] unsupervised in a bedroom where he had access to multiple loaded firearms." *Id.* at 14. The juvenile court further found Detective Maitland's testimony credible and Mother's statements — that she was not aware of another gun in the home — to not be credible. *See id.* at 14-15.

We discern no abuse of discretion. It is undisputed that Child, who was three years old at the time of the incident, suffered a self-inflicted gunshot

wound to the abdomen. N.T., 9/30/2022, at 66; DHS Exhibits 13-14 (CPS reports). On direct examination, Mother confirmed that Child was in her and Father's care at the time of the incident. *See* N.T., 9/30/2022, at 105-106. Detective Maitland testified that during his investigation, he discovered two unsecured, loaded firearms in the bedroom where Child shot himself. *Id.* at 26-29, 34-38. Child was left in the bedroom he, Mother, and Father all shared with Mother's unsecured, loaded firearm. *See id.* at 105-106.

Moreover, even though Mother alleges that she was unaware that there was another gun in the home, the juvenile court determined that it did not find this credible, stating that while it believed Detective Maitland's testimony, it "formed its own opinion about Mother's credibility." N.T., 9/30/2022, at 107; Juvenile Ct. Op., 12/12/2022, at 14-15. The court heard testimony that Mother, Father, and Child shared a "small bedroom," that contained male and female items of clothing. N.T., 9/30/2022, at 40, 42. As related *supra*, this Court is required to "accept the findings of fact and credibility determinations of the trial court if they are supported by the record[.]" *In re R.J.T.*, 9 A.3d at 1190. Accordingly, the juvenile court was well within its discretion to find Mother not credible regarding her knowledge of the "ghost gun." Regardless of her knowledge, though, Mother recklessly endangered Child's welfare by egregiously failing to supervise him in a room that contained her own unsecured, loaded firearm.

Moreover, DHS satisfied its burden that Mother was a perpetrator of abuse pursuant to Section 6381(d). The juvenile court stated that "[Child] sustained injuries of such a nature that would not ordinarily be sustained but for the acts or omissions of the person responsible for the welfare of the child." Juvenile Ct. Op., 12/12/2022, at 15. Indeed, Child suffered a gunshot wound to the abdomen, "an injury that would not ordinarily be sustained but for the acts or omissions of the parent[.]" *In re L.Z.*, 111 A.3d at 1185. Additionally, Mother claimed she did not have knowledge of the second firearm. N.T., 9/30/2022, at 107. Mother failed to rebut the presumption afforded by Section 6381(d) as no evidence was presented that she, and Father, did not maintain primary care of Child when the incident occurred. *See In re L.Z.*, 111 A.3d at 1185.

We also note that Mother baldly relies on several cases for the proposition that "the facts in the present matter have nothing in common with the aforementioned abuse law." Mother's Brief at 19-23. With these cases, Mother attempts to rebut the Section 6381(d) presumption. *See id.* at 20. Mother cites to *In the Matter of Read*, 693 A.2d 607, 611-12 (Pa. Super. 1997) (finding that the testimony failed to support a conclusion that the injuries were not accidental), and *In the Interest of A.C.*, 237 A.3d 553, 562 (Pa. Super. 2020) (concluding that the trial court did not consider "innuendo and suspicion[,]" but instead "relied heavily on the overwhelming medical testimony" and the mother's non-credible explanations in reaching its

- 12 -

decisions). However, as aptly stated in DHS's brief, these cases are distinguishable. *See* DHS's Brief at 23 n.11. In the case at bar, Child suffered an injury that would not ordinarily be sustained but for the acts or omissions of Mother and Father as Child suffered a self-inflicted gunshot wound to the abdomen after he was left alone in a bedroom with two unsecured, loaded firearms. Therefore, we discern no abuse of discretion, and no relief is due.

In her second issue, Mother argues that the juvenile court incorrectly allowed Detective Maitland to offer his opinion on Mother's credibility where Pennsylvania "[bars] expert witnesses and lay witnesses from" making this determination. Mother's Brief at 23; *citing Commonwealth v. Hairston*, 249 A.3d 1046, 1069 (Pa. 2021) and *Commonwealth v. McClure*, 144 A.3d 970, 977 (Pa. Super. 2016). She avers that Detective Maitland improperly testified that it was "unlikely" that Mother was not aware of the second firearm and that he did not find her "credible." *Id.* at 23-24; *see* N.T., 9/30/22, at 42.

> With respect to evidentiary issues, this Court has previously stated:
>
> When we review a trial court ruling on admission of evidence, we must acknowledge that decisions on admissibility are within the sound discretion of the trial court and will not be overturned absent an abuse of discretion or misapplication of law. In addition, for a ruling on evidence to constitute reversible error, it must have been harmful or prejudicial to the complaining party.
>
> An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record, discretion is abused.

- 13 -

*Phillips v. Lock*, 86 A.3d 906, 920 (Pa. Super. 2014) (citation omitted).

First, we note that DHS contends that Mother's argument is waived for failure to assert this error in her concise statement of errors complained of on appeal. DHS Brief at 26. Indeed, a review of the concise statement reveals she did not raise this issue. *See* Mother's Statement of Errors to be Complained of On Appeal, 10/27/22, at 1-2 (unpaginated). Moreover, in its Rule 1925(a) opinion, the juvenile court did not address Mother's argument because she did not include it in her concise statement. Mother offers no argument against waiver. As such, we agree that Mother has waived this claim. *See In re M.Z.T.M.W.*, 163 A.3d 462, 466 (Pa. Super. 2017) ("[I]t is well-settled that issues not included in an appellant's statement of questions involved and concise statement of errors complained of on appeal are waived.") (citation omitted).

Additionally, the juvenile court stated that it "formed its own opinion about Mother's credibility." Juvenile Ct. Op., 12/12/2022, at 14-15. Accordingly, Detective Maitland's testimony regarding Mother's credibility was not harmful or prejudicial because the court made its own conclusions independent of this evidence.

In Mother's third claim, she argues that the juvenile court erred in adjudicating Child dependent. Mother's Brief at 25. She simply reiterates that there is no evidence that she knew the "ghost gun" responsible for Child's injury was in the home. *Id.*

Regarding adjudication of a child, this Court has stated:

To adjudicate a child dependent based upon lack of parental care or control, a juvenile court must determine that the child:

> is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals. A determination that there is a lack of proper parental care or control may be based upon evidence of conduct by the parent, guardian or other custodian that places the health, safety or welfare of the child at risk. [42 Pa.C.S.A. § 6302(1).]

> In accordance with the overarching purpose of the Juvenile Act "to preserve family unity wherever possible," *see* 42 Pa.C.S.[ ] § 6301(b), a child will be declared dependent only when he is presently without proper parental care or control, and when such care and control are not immediately available. *In the Interest of R.T.*, [592 A.2d 55, 57] (Pa. Super. 1991). This Court has defined "proper parental care" as "that care which (1) is geared to the particularized needs of the child and (2) at a minimum, is likely to prevent serious injury to the child." [*In the matter of C.R.S.*, 696 A.2d 840, 845 (Pa. Super. 1997).]

*In re M.B.*, 101 A.3d 124, 127-128 (Pa. Super. 2014). Additionally, this Court has stated "'[a] finding of abuse may support an adjudication of dependency.'" *In re I.R.-R.*, 208 A.3d 514, 520 (Pa. Super. 2019) (citation omitted).

The juvenile court aptly determined, "[i]n adjudicating [Child] dependent, this [c]ourt determined that its finding of child abuse against Mother was supported by clear and convincing evidence." Juvenile Ct. Op., 12/12/2022, at 12. As a consequence of the abuse finding, the court further determined that "DHS met its burden of demonstrating [Child] was a dependent child and was without proper parental care and control." *Id.* As noted above, the court concluded: (1) the evidence reflected Child's injuries

- 15 -

were certified as near fatality; (2) Mother and Father's reckless conduct resulted in Child's near fatal injuries; (3) Mother and Father's egregious failure to supervise Child placed his life, safety, and welfare in danger; (4) Mother and Father failed in their duty to protect and prevent serious injury to Child; and (5) Proper parental care was not immediately available to Child. *Id.* at 13-14. We agree.

We reiterate that the juvenile court's finding of abuse was supported by the record, and we do not disturb it on appeal. This alone supports the court adjudicating Child dependent. *See In re I.R.-R.*, 208 A.3d at 520 (citation omitted). Moreover, we note the juvenile court's finding that Child was without proper parental care or control is also supported by the record. Mother and Father's conduct — leaving Child alone in a room with numerous unsecured loaded firearms — placed his health, safety, and welfare at risk. *See* 42 Pa.C.S.A. § 6302(1); *In re M.B.*, 101 A.3d at 127-128. This conduct was not "geared to the particularized needs of" Child, nor was it "at a minimum, . . . likely to prevent serious injury[,]" and as such, it demonstrated a lack of parental care and control. *See In re M.B.*, 101 A.3d at 127-128. Thus, the juvenile court properly determined that Mother and Father were perpetrators of abuse against Child as defined by Section 6303. The foregoing evidence also supports the court's finding that Child was without proper care and control. Accordingly, Mother is not entitled to relief.

Consequently, the record supports the juvenile court's order adjudicating Child dependent and finding that Mother was a perpetrator of "child abuse" as defined by 23 Pa.C.S. § 6303. As such, the court did not abuse its discretion.

Order affirmed.


*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*


*Date: 3/16/2023*