J-S75016-18

2019 PA Super 130

| | | |
|---|---|---|
| IN THE INTEREST OF: I.R.-R., A MINOR | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: J.R., FATHER | : : : : : : : | |
| | : | No. 2215 EDA 2018 |

Appeal from the Order Entered June 26, 2018
In the Court of Common Pleas of Philadelphia County Family Court at
No(s): CP-51-DP-0001236-2018

| | | |
|---|---|---|
| IN THE INTEREST OF: J.R.-R., A MINOR | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: J.R., FATHER | : : : : : : : | |
| | : | No. 2217 EDA 2018 |

Appeal from the Order Entered June 26, 2018
In the Court of Common Pleas of Philadelphia County Family Court at
No(s): CP-51-DP-0001237-2018

BEFORE: PANELLA, J., NICHOLS, J., and MUSMANNO, J.

OPINION BY NICHOLS, J.:                    **FILED APRIL 24, 2019**

J.R. (Father) appeals from the orders adjudicating dependent his two daughters, I.R.-R., born in August 2008, and J.R.-R., born in July 2010 (collectively, Children). The orders also found that Father perpetrated child abuse against I.R.-R. We are constrained to vacate the orders of adjudication and remand the case for a new hearing on the matter.

The trial court set forth the relevant facts of this appeal as follows:

The family in this case became involved with [the Department of Human Services (DHS)] on May 14, 2018, when DHS received a Child Protective Services (CPS) report against Father. The report alleged that [I.R.-R.] had been sexually abused by Father, most recently on May 8, 2018; [I.R.-R.] was taken to St. Christopher's Hospital for Children . . . and was met at [the hospital] by police;[1] Father was at work and the police wanted to speak with him; there is a history of domestic violence in the home; A.R. (Mother) was aware of Father's sexual abuse for about one year. This report was indicated on June 19, 2018.

DHS visited [I.R.-R.] at [the hospital] on May 15, 2018. [I.R.-R.] told DHS that Father had been sexually abusing her for the past two years, most recently on May 10, 2018 and that she told Mother and her siblings about the abuse about one year ago, but the family did not believe the allegations. DHS also learned that [I.R.-R.] had been receiving therapy for bed-wetting. [I.R.-R.] was subsequently transported for a forensic interview at the Philadelphia Children's Alliance (PCA). When DHS interviewed Mother, Mother admitted that [I.R.-R.] disclosed the sexual abuse approximately one year ago but Mother did not believe the allegations. On May 15, 2018, Children began residing with their adult sister (Sister), pursuant to a safety plan.

On May 16, 2018, DHS spoke with [I.R.-R.] at the home of Sister. [I.R.-R.] confirmed that Father had been abusing her and that she told Mother about the abuse, but Mother did not believe that the abuse occurred. On May 17, 2018, DHS, with the assistance of a Spanish interpreter, spoke with Mother over the telephone. Mother again admitted that Child disclosed the sexual abuse to Mother and that Father denied ever abusing [I.R.-R.]. Mother also admitted that she had a history of domestic violence with Father. On May 17, 2018, DHS obtained an Order of Protective Custody (OPC) because Sister was unable to continue caring for Children and Children were subsequently placed together in a foster home through NorthEast Treatment Services, Inc. (NET).

On May 18, 2018, a shelter care hearing was held for Children. Father was not present for this hearing. The court lifted the OPC and the temporary commitment to DHS was ordered to stand. On

_____

[1] The hospital did not find medical evidence of sexual abuse. **See** N.T. Adjudicatory Hr'g, 6/26/18, at 57.

> May 22, 2018, DHS filed a dependency petition for Children due to concerns of sexual abuse of [I.R.-R.] by Father. On June 26, 2018, an adjudicatory hearing was held for Children. Father was not present for this hearing. At this hearing, testimony was given by the DHS social worker, the NET case manager, and the PCA forensic interviewer.

Trial Ct. Op., 9/11/18, at 1-2 (record citation and footnotes omitted). Children were not present at the hearing.

Counsel for DHS called the PCA forensic interviewer as her first witness. Father's counsel objected "to anyone reading any statements of the child unless there's some reason that it should fall under a tender years exception." N.T. Adjudicatory Hr'g at 16. The trial court overruled the objection, and Father's counsel responded, "I would be able to stipulate that if the . . . worker testified, she would testify in conformity with the [PCA] report." *Id.* at 17. Father's counsel subsequently clarified her stipulation stating, "I won't stipulate on behalf of my client that these things are true; it's that this would be the testimony." *Id.* at 20. In light of this stipulation, DHS entered the PCA report into evidence and the court excused the forensic interviewer.

> The PCA report summarized I.R.-R.'s interview statements as follows:

> [Father] did "sexual things to [I.R.-R.]." [Father] put his "inappropriate part" in [I.R.-R.'s] "inappropriate part" more than one time which "hurted so much," put his "inappropriate part" in [I.R.-R.'s] mouth, put his mouth on [I.R.-R.'s] "inappropriate part," touched [I.R.-R.'s] chest area . . . with his hands, put his mouth on her chest area, and touched the outside of her "inappropriate part" with his hands and his hands were moving around. [Father] told [I.R.-R.] not to tell.

DHS Ex. 2 at 5. A court-ordered psychological evaluation indicated that I.R.-R. is scared of Father, and she hopes to return to Mother's care if Father leaves the family home. DHS Ex. 5 at 2 (unpaginated).

Later at the hearing, counsel for DHS called a DHS social worker as a witness. The social worker explained that she conducted an investigation based upon the abuse documented in the CPS report. Again, Father's counsel objected to "any testimony of this worker as to any hearsay statements made by the child or out-of-court statements offered for the truth or their veracity . . . ." N.T. Adjudicatory Hr'g at 27. The trial court overruled the objection stating, "Well, they're not . . . being offered for the truth of the matter; they're offered to prove what the state . . . of mind of the child at the time [s]he was interviewed, so, your objection is overruled." *Id.* DHS entered the CPS report into evidence, and the social worker testified about her investigation into I.R.-R.'s sexual abuse allegations.[2]

> After all testimony was given, the trial court found clear and convincing evidence for Children to be adjudicated dependent. The trial court discharged the temporary commitment to DHS and fully committed Children to DHS. The trial court referred [I.R.-R.] to Behavioral Health Services . . . for consultation, evaluation, and monitoring and Father for evaluation and monitoring. The trial court also ordered Father to be referred for a parenting capacity evaluation, to the Achieving Reunification Center . . . for parenting, housing and all other appropriate services, to Menergy for domestic violence and anger management, and for a biopsychosexual evaluation. Additionally, Father was ordered to

---

[2] The CPS report included the same allegations summarized in the PCA report. Indeed, the social worker characterized I.R.-R.'s statements as "consistent" and "never wavering." N.T. Adjudicatory Hr'g at 46.

provide documentation or verification of employment. The trial court found that there was clear and convincing evidence that Father posed a grave threat to Children and Father's visits were suspended until further order by the court.

Trial Ct. Op. at 2-3.

Father timely filed two notices of appeal on July 26, 2018. At docket number 1236-2018, Father filed a notice of appeal from the trial court's order related to I.R.-R. At docket number 1237-2018, Father filed a separate notice of appeal from the court's order related to J.R.-R. This Court consolidated the appeals *sua sponte* on August 23, 2018. The notices of appeal included concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i), claiming that the court admitted impermissible hearsay and DHS failed to prove that Father committed abuse or that the court should have adjudicated Children dependent.

The trial court filed a responsive opinion, arguing that it correctly admitted I.R.-R.'s out-of-court statements. The court noted, "[a]n out-of-court statement is not hearsay when the statement is offered to . . . reflect the declarant's state of mind." Trial Ct. Op. at 8 (citing **In re Child M.**, 681 A.2d 793, 799-800 (Pa. Super. 1996)). The court also provided another rationale for admission of the statements, observing that "[t]hese types of [out-of-court] statements are not admissible as substantive evidence of the truth of a child's accusation of abuse but can be used to explain the basis of a witness's conclusions, including the conclusions of an individual investigating child abuse." **Id.** (citing **In re Adoption of R.K.Y.**, 72 A.3d 669, 678 (Pa. Super. 2013)). In light of the properly admitted testimony and exhibits, the

court concluded that DHS satisfied its burden of providing clear and convincing evidence to support the adjudications.

On appeal, Father raises four questions, which we have reordered as follows:

> [1.] Did the trial court commit reversible error when it admitted the hearsay testimony of the social worker and unreliable hearsay testimony/records of the PCA investigator including what the children allegedly stated to them?
>
> [2.] Did the trial court commit reversible error when it deprived Father of his due process rights and other Pennsylvania and Federal constitutional rights by admitting unreliable hearsay evidence including the children's statements which were not subject to cross-examination?
>
> [3.] Did the trial court commit reversible error when it adjudicated the children dependent where [DHS] did not meet its burden by clear and convincing evidence to establish that the children were dependent under 42 Pa.C.S. § 6302 as to Father?
>
> [4.] Did the trial court commit reversible error when it found child abuse by Father where [DHS] did not meet its burden by clear and convincing evidence?

Father's Brief at 4.[3]

We address Father's first two questions together, because they are related. Father emphasizes that the trial court admitted "several pieces of

_____

[3] Although Father presents four distinct questions on appeal, the argument section of Father's brief is not divided into four separate sections. *See* Pa.R.A.P. 2119(a) (stating: "The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part . . . the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent"). Nevertheless, Father's failure to comply with Rule 2119(a) does not preclude this Court from reviewing the questions presented.

hearsay evidence" over the objection of Father's counsel. *Id.* at 7. Although the court admitted I.R.-R.'s out-of-court statements to demonstrate the child's state of mind, Father argues that I.R.-R.'s state of mind was not an issue at the adjudicatory hearing. *Id.* at 7. Father asserts that the sole purpose of the hearing was to determine whether Children were without proper parental care and control due to the alleged sexual abuse, and evidence regarding I.R.-R.'s state of mind contributed very little to the dependency determination. *Id.* at 7-8. Father insists I.R.-R.'s out-of-court statements constituted inadmissible hearsay that did not fall under any exception to the general rule prohibiting hearsay. *Id.* at 9.

"[T]he standard of review in dependency cases requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the [trial] court's inferences or conclusions of law." *In re R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010). "Accordingly, we review for an abuse of discretion." *Id.* (citations omitted).

"The admission of evidence is within the discretion of the trial court and such decisions will be reversed only if the trial court has abused its discretion." *R.K.Y.*, 72 A.3d at 675 (citation omitted). The Rules of Juvenile Court Procedure provide that in adjudications, each party shall have an opportunity to present evidence subject to the rules of evidence. Pa.R.J.C.P. 1406(C), cmt.

"'Hearsay' is 'a statement that (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement.'" *In re A.J.R.-H.*, 188 A.3d 1157, 1167 (Pa. 2018) (quoting Pa.R.E. 801(c)). "Under the Pennsylvania Rules of Evidence, hearsay evidence is incompetent and inadmissible unless it meets an exception set forth in the Rules or one prescribed by this Court or statute." *Id.* (citation omitted).

Nevertheless, "[n]ot all remarks which a witness attributes to another person can properly be characterized as 'hearsay.'" *Child M.*, 681 A.2d at 800.

> An out-of-court statement is not hearsay when it is introduced purely for the purpose of establishing that the statement was made and not to establish its truth. Likewise, an out-of-court statement is not hearsay if it is offered to explain a course of conduct or to reflect the declarant's state of mind.

*Id.* (citation and brackets omitted); *compare* Pa.R.E. 803(3) (providing an exclusion to the rule against hearsay for statements of the "declarant's then-existing state of mind (such as motive, intent or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health)").

"Testimony as to what a child tells other people is admissible in order to establish that child's mental state at the time he or she made the comment," particularly for purposes of identifying the child's needs for therapy and treatment. *R.K.Y.*, 72 A.3d at 677 (citing *Child M.*, 681 A.2d at 800) (brackets omitted). "[T]estimony introduced to show a child's state of mind for treatment and therapy purposes is admissible only for that limited purpose

and not as substantive evidence of the truth of the matters asserted." *Id.* at 678 (citations omitted).

Instantly, the trial court permitted DHS to admit I.R.-R.'s out-of-court statements through testimony from the social worker and exhibits including the CPS and PCA reports. This evidence was admissible for the limited purpose of demonstrating I.R.-R.'s state of mind for treatment and therapy purposes following her allegations against Father. *See id.* at 677-78. Accordingly, the court did not abuse its discretion in admitting this evidence. *Id.* at 678.

In his third and fourth issues, Father complains that I.R.-R.'s out-of-court statements were the only pieces of evidence concerning the abuse allegations, and DHS provided no reasons why Children could not attend the hearing to testify against him. Father's Brief at 7-8. Father insists the trial court impermissibly considered the out-of-court statements for the truth of the matters asserted, as there was no other evidence to demonstrate that he could not provide proper parental care. *Id.* at 9. Absent additional evidence, Father asserts that DHS did not adequately prove that he committed child abuse and Children were dependent. *Id.* at 10. Based upon the foregoing, Father concludes that this Court must reverse the orders adjudicating Children dependent and remand the matter. *Id.*

Our Court has analyzed the burden of proof in dependency cases as follows:

> To adjudicate a child dependent, a trial court must determine, by clear and convincing evidence, that the child:

is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals. A determination that there is a lack of proper parental care or control may be based upon evidence of conduct by the parent, guardian or other custodian that places the health, safety or welfare of the child at risk.

42 Pa.C.S § 6302. "Clear and convincing" evidence has been defined as testimony that is "so clear, direct, weighty, and convincing as to enable the trier of facts to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." *In re C.R.S.*, 696 A.2d 840, 843 (Pa. Super. 1997) (citation omitted).

In accordance with the overarching purpose of the Juvenile Act "[t]o preserve the unity of the family wherever possible," *see* 42 Pa.C.S. § 6301(b)(1), "a child will only be declared dependent when [s]he is presently without proper parental care and when such care is not immediately available." *In re R.T.,* . . . 592 A.2d 55, 57 ([Pa. Super.] 1991) (citation omitted). This Court has defined "proper parental care" as "that care which (1) is geared to the particularized needs of the child and (2) at a minimum, is likely to prevent serious injury to the child." *In re C.R.S., supra* at 845 (citation omitted).

*In re A.B.*, 63 A.3d 345, 349 (Pa. Super. 2013).

"A finding of abuse may support an adjudication of dependency."

*Matter of C.R.S.*, 696 A.2d at 843. The Child Protective Services law defines

"child abuse" as "intentionally, knowingly or recklessly . . . [c]ausing sexual

abuse or exploitation of a child through any act or failure to act." 23 Pa.C.S.

§ 6303(b.1)(4). "Sexual abuse or exploitation" is defined as "[t]he

employment, use, persuasion, inducement, enticement or coercion of a child

to engage in or assist another individual to engage in sexually explicit conduct,

which includes . . . [a]ctual or simulated sexual activity or nudity for the

purpose of sexual stimulation or gratification of any individual." 23 Pa.C.S. § 6303(a). A finding of abuse must be supported by clear and convincing evidence. *In Interest of J.R.W.*, 631 A.2d 1019, 1024 (Pa. Super. 1993).

Instantly, Children did not testify at the adjudicatory hearing. DHS entered I.R.-R.'s out-of-court statements into evidence through admission of the various investigation reports and testimony from the DHS social worker. DHS did not provide any other evidence to corroborate the claims of sexual abuse, and the trial court relied on I.R.-R.'s out-of-court statements to adjudicate Children dependent and find that Father had committed sexual abuse. *See* Trial Ct. Op. at 4-7.

Significantly, I.R.-R.'s out-of-court statements, which the trial court admitted as evidence of I.R.-R.'s state of mind, do not constitute substantive evidence proving that Father perpetrated any acts of sexual abuse. *See R.K.Y.*, 72 A.3d at 678. Given the state of the record, we are constrained to conclude that the court abused its discretion, and the evidence DHS presented was not competent to support Children's adjudication. *Id.*; *R.J.T.*, 9 A.3d at 1190.

Therefore, we vacate the orders of adjudication and remand the case for a new hearing and determination on the dependency petition, to occur within forty-five days of this decision. At that time, the trial court should determine whether it can evaluate I.R.-R.'s out-of-court statements for the truth of the matters asserted, pursuant to a recognized hearsay exception prescribed by this Court or statute. *See, e.g.*, 42 Pa.C.S. § 5986(a)

(explaining that statements "made by a child describing acts of indecent contact, sexual intercourse or deviate sexual intercourse performed with or on the child by another" are admissible in a dependency proceeding involving that child if the court finds, "in an *in camera* hearing, that the evidence is relevant and that the time, content, and circumstances of the statement provide sufficient indicia of reliability," and the child either testifies at the proceeding or is found by the court to be unavailable as a witness). The parties also have the opportunity to present any other evidence necessary to confirm or deny the allegations of abuse. All other aspects of the adjudication orders shall remain in effect pending the outcome of the new hearing.

Orders vacated. Cases remanded with instructions. Jurisdiction relinquished.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/24/19