J-A17034-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: E.W., A MINOR | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: E.H., MOTHER | : : : : : : : | |
| | : | No. 603 EDA 2024 |

Appeal from the Order Entered January 23, 2024
In the Court of Common Pleas of Philadelphia County
Juvenile Division at No(s):  CP-51-DP-0000869-2023

BEFORE:  BOWES, J., NICHOLS, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.:                    **FILED SEPTMEBR 5, 2024**

E.H. ("Mother") appeals from the trial court's order adjudicating her nine-year-old daughter E.W. ("Child"), born in 2014, dependent.  After careful review, we affirm.

In August 2023, the Philadelphia Department of Human Services ("DHS") received a child protective services ("CPS") report alleging Mother's boyfriend ("Boyfriend") sexually abused Child.  **See** N.T., 1/18/24, at 13. Following an investigation, DHS indicated the report, filed a dependency petition, and recommended the involvement of a Community Umbrella Agency ("CUA") and therapy services.  **See id**. at 14.  At the time of the investigation, Child was staying temporarily with her maternal grandmother ("Grandmother").  **See id**. at 17.   Mother has three other children, E.L.R., a boy born in 2015, E.V.R., a girl born in 2019, and E.Z.R., a boy born in 2022 (collectively, "the children").  **See** DHS Exhibit 1, CPS Report, 8/20/23, at 1.

In September 2023, DHS received a CPS report alleging sexual abuse, by Boyfriend, of a second of Mother's children, four-year-old E.V.R. **See** DHS Exhibit 3, CPS Report, 9/21/23, at 4; **see also** N.T., 1/18/24, at 29. DHS also indicated this report. **See id**. at 1; **see also** N.T., 1/18/24, at 37.

The police arrested Boyfriend for the sexual assault of Child. **See** DHS Exhibit 2, Secure Criminal Docket, MC-51-CR-0000408-2024, at 1. Boyfriend is charged with one count each of rape — forcible compulsion, unlawful contact with a minor — sexual offenses, statutory sexual assault — 8-11 years old, sexual assault, victim intimidation, endangering the welfare of a child, corruption of minors, indecent assault — forcible compulsion, simple assault, and tampering with evidence. **See id**. at 2.

After several continuances, dependency hearings regarding all four children took place in January 2024. At the close of the first day of hearings, the trial court discharged the dependency petitions as to E.V.R. and E.Z.R. because their biological father was able to assume custody. **See** N.T., 1/18/24, at 113-15. Because DHS did not raise any specific allegations with respect to E.L.R., the trial court found he was not a dependent child. **See** N.T., 1/23/24, at 26-27.

At the hearing, Latisha Lowery ("Ms. Lowery"), a DHS social worker, testified Mother did not believe the sexual abuse allegations against Boyfriend.

*See* N.T., 1/18/24, at 15, 27. According to Ms. Lowery, Mother believed Child might have been abused by a young boy known to the family.[1] *See id*. at 26.

Akima Hudson ("Ms. Hudson"), a case manager from Tabor Services CUA, testified as to her concerns regarding Mother. *See* N.T., 1/18/24, at 41-97. Ms. Hudson noted Mother did not believe the sexual abuse allegations made by Child or E.V.R. *See id*. at 42, 48. Ms. Hudson explained when the police arrested Boyfriend, Mother was distraught, claiming he should not be in jail and saying she was considering posting bail for him. *See id*. at 45. Ms. Hudson averred Mother was not truthful with her about her relationship with Boyfriend and falsely claimed they had broken up. *See id*. at 45-48. Ms. Hudson informed the court Mother continued the relationship with Boyfriend even though Boyfriend's family had made violent threats against her. *See id*. at 67, 76. Ms. Hudson asserted Child would be at risk if returned home because Boyfriend "was accused of sexually assaulting the children and Mother still has [a] relationship with him." *Id*. at 48, 63. Ms. Hudson stated Mother has on-going mental health issues and needs treatment. *See id*. at 69, 76. Ms. Hudson acknowledged Mother attends all supervised visits with the children, but noted she is not the visitation coach and only monitored one such visit between Mother and the children. *See id*. at 53.

_____

[1] It is not clear from the record how Child knew this boy, why Mother believed he might have abused her, and, if so, why Mother did not take any actions based upon this belief.

Ms. Hudson believed Child should remain with Grandmother because Grandmother "does a great job[.]" *Id.* at 80, 91. Ms. Hudson explained Grandmother takes Child to therapy and is working with Child's school to get her assessed for an Individualized Education Plan. *See id*. Ms. Hudson testified unequivocally Child wanted to remain with Grandmother. *See id*. at 81-82.

Mother did not testify at the hearing and did not call any witnesses.

At the continued dependency hearing, the trial court adjudicated Child dependent. *See* N.T., 1/23/24, at 26-28. Following the adjudication, the trial court interviewed Child in chambers solely with respect to disposition.[2] *See id*. at 29. This appeal followed.[3]

On appeal, Mother raises five interrelated issues:

1. Did the trial court commit reversible error when it adjudicated [Child] dependent and found that "clear and convincing evidence exists to substantiate the allegations set forth in the petition" where the [p]etition alleged [Child] disclosed she was sexually abused by a third party and DHS failed to present any competent evidence to establish that abuse occurred and where DHS's own witness cast doubt on the veracity of the abuse allegations in the [p]etition?

---

[2] The trial court sealed the interview transcript, which is not included in the certified record. *See id*. at 29. We have repeatedly clearly stated it is an appellant's responsibility to ensure that the certified record contains all documents necessary to ensure this Court is able to review her claims. *See e.g., Mazzarese v. Mazzarese*, --- A.3d ---, 2024 WL 3405622, at *8 (Pa. Super. Jul. 15, 2024).

[3] Mother and the trial court complied with Pa.R.A.P. 1925.

2. Did the trial court err by relying on alleged child [sic] hearsay statements contained within a [CPS] report to adjudicate Child dependent where the statements within the report were not admitted into evidence for their truth, but merely to establish that DHS initiated an investigation regarding Child?

3. Did the trial court commit reversible error and violate Mother's right to due process under the federal and state constitutions by shifting the evidentiary burden to Mother to disprove the veracity of alleged statements describing child abuse which were not admitted into evidence and the veracity of which DHS never established?

4. Did the trial court commit an abuse of discretion when it adjudicated [Child] dependent absent clear and convincing evidence that Child "is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals" [42 Pa.C.S.A. § 6302]?

5. Did the trial court commit an error of law and abuse of discretion by importing a best interests of the child standard into the Juvenile Act to adjudicate [Child] dependent[]where there was no evidence that Child's mental or emotional health was affected, and where the only evidence against Mother was the effect on her of child sexual abuse allegations which were never proven?

Mother's Brief at 6 (citation format regularized).

Initially, Mother's argument does not match her statement of the questions involved. This is contrary to our rules of appellate procedure. *See* Mother's Brief, at 21-51; *see also* Pa.R.A.P. 2119(a) ("The argument shall be divided into as many parts as there are questions to be argued[.]"). Nevertheless, as all Mother's issues concern a single point — that the evidence was insufficient to sustain the trial court's dependency adjudication — we will address her issues together because this discrepancy does not hamper our

review. *See Donahue v. Federal Exp. Corp.*, 753 A.2d 238, 241 n.3 (Pa. Super. 2000).

This Court's standard of review for dependency cases requires that we accept the trial court's findings of fact and credibility determinations when supported by the record. *See In re R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010). The Court is not required to accept the lower court's inferences or conclusions of law and accordingly reviews for an abuse of discretion. *See id*.

A dependency hearing is a two-stage process governed by the Juvenile Act, 42 Pa.C.S.A. §§ 6301-6365. The first stage requires the court to hear evidence on the dependency petition and to determine whether the child is dependent. *See* 42 Pa.C.S.A. § 6341(a). Section 6302, defines a "dependent child," in part, as one who

> is without proper parental care or control, subsistence, education as required by law, or other care or control ***necessary for [her] physical, mental, or emotional health, or morals***. A determination that there is a lack of proper parental care or control may be based upon evidence of conduct by the parent … that places the health, safety or welfare of the child at risk[.]

42 Pa.C.S.A. § 6302(1) (emphasis added). This Court has held a child will be declared dependent when she is presently without proper parental care or control, and when such care and control are not immediately available. *See In Interest of R.T.*, 592 A.2d 55, 57 (Pa. Super. 1991). Proper parental care has been defined as "that care which (1) is geared to the particularized needs of the child and (2) at a minimum, is likely to prevent serious injury to the child." *In re A.B.*, 63 A.3d 345, 349 (Pa. Super. 2013) (internal quotation

marks and citation omitted). However, a child can be found dependent even without a factual finding by the trial court that the child was the subject of abuse. *See In re R.P.*, 957 A.2d 1205, 1211-13 (Pa. Super. 2008) (citation omitted). A child may be found dependent if her parent's conduct "places their future health, safety or welfare at risk," including through failure to protect the child or seek treatment to maintain the child's physical or emotional welfare. *Id*. at 1213 (citing 42 Pa.C.S. § 6302(1)). This first stage must be found by "clear and convincing evidence," *i.e.*, testimony that is "so clear, direct, weighty, and convincing as to enable the trier of facts to come to a clear conviction, without hesitancy, of the truth of the precise facts at issue." *Matter of C.R.S.*, 696 A.2d 840, 843 (Pa. Super. 1997) (internal quotation marks and citation omitted).

If the court finds a child is dependent, it proceeds to the second stage of the dependency process, which requires an appropriate disposition based on the best interest of the child pursuant to section 6351 (a) and (b). *See* 42 Pa.C.S.A. § 6341(a), (c); *see also In re B.S.*, 923 A.2d 517, 521 (Pa. Super. 2007).

Mother argues DHS sought to adjudicate Child dependent based upon alleged sexual abuse but never presented clear and convincing evidence the abuse occurred. *See* Mother's Brief at 21-24. Mother further complains the trial court inappropriately relied on Child's non-testimonial statements regarding her fears based on Mother's disbelief of the sexual abuse

allegations. *See id*. Mother maintains there was no record support for the trial court's finding Mother was not meeting Child's mental health and emotional needs. *See id*. Lastly, Mother contends the trial court inappropriately shifted the burden of proof to her to disprove the abuse allegations. *See id*. at 48-50.

The trial court declined to issue a comprehensive 1925(a) opinion in this matter, instead relying on its brief bench decision. *See* Trial Court's Notice of Compliance with Rule of Appellate Procedure 1925(a), 3/25/24, at 1-2 (unnumbered). In finding Child dependent the Court stated:

> . . . [the trial court] *was not tasked with deciding whether [Child] was subjected to child abuse* by someone who is not her parent, [but] there's controver[t]ed testimony as to whether [Child] was . . . subjected to sexual abuse by [Boyfriend] or, contrar[il]y, whether [Child] made up statement[s] suggesting [] she was sexually abused by [Boyfriend].
>
> Under either scenario, . . . [Child] is . . . a dependent child. The reason is that . . . [Child] lacks. . . . proper parental care and control and subsistence necessary for her mental and emotional health.
>
> In the event that she was actually abused, there would be no refuting whether she lacks proper care or control . . . because we would have a child who, if she is telling the truth, was raped by someone who's now pending prosecution for those allegations.
>
> But in the event that [Mother] is correct, and her child is [making] allegations that are not true, what is clear [is] that [Child] has mental and emotional health needs that are not being met by [Mother].
>
> So, under either of those scenarios, . . . [Child] is a dependent child. [The court finds] the testimony [of Ms. Lowery and Ms. Hudson] to be credible to establish that [Child] did, in

- 8 -

fact, make these allegations, and that she knows and feels that [Mother] does not believe her, and it was [un]refuted that [Mother] does not believe her.

So, regard[less] of whether or not this actual abuse took place, of [Child], . . . she is a dependent child because, even if she were making these statements [and] they were [not] true, and they resulted in [Boyfriend] being incarcerated, . . . there's clear and convincing evidence, that she [] then lacks [sic] the mental or emotional health needed, and . . . she is a dependent child[.]

N.T., 1/23/24, at 27-28 (emphasis added).

After a thorough review of the law and the record, we find no error in the trial court's conclusion Child is a dependent child. The record demonstrates both of Mother's daughters alleged Boyfriend sexually abused them. *See* N.T., 1/18/24, at 13, 29. After two investigations, DHS indicated the reports. *See id*. at 14, 37. The Commonwealth charged Boyfriend with multiple offenses against Child, including rape, and he is currently in jail. *See* DHS Exhibit 2; N.T., 1/23/24, at 8. Both Ms. Lowery and Ms. Hudson testified Mother did not believe either child's allegations. *See* N.T., 1/18/23, at 15, 26-27, 42, 48. Ms. Hudson's uncontradicted testimony showed Mother was upset not about the reports but about Boyfriend's incarceration, wished to bail him out of jail, and lied about her on-going relationship with him. *See id*. at 45-48. Mother persisted in the relationship even though Boyfriend's family made violent threats against her. *See id*. at 67, 76. Ms. Hudson also pointed out Mother's actions went beyond disbelief of the allegations and included an active attempt to make Child recant. *See id*. at 94. When pressed on cross-

examination about why Child was without proper parental care and control, Ms. Hudson clearly explained her concerns about Mother's poor judgment and the on-going threat to Child should Boyfriend be released from incarceration, stating:

> [Mother] said that she was going to bail the person that was alleged [to have] sexually assault[ed] her children out of jail. . . . And she knew that she was still in the relationship with this guy, and she told me several times that she wasn't. . . . She was going to allow her children to return to the home, and she was still in a relationship with him while it's an ongoing investigation.
>
> \* \* \* \* \*
>
> Mother has also stated that [Boyfriend] was not in [her] home.  She was willing to allow the children . . . back [in] the home, and she still had a full-blown relationship with this man.
>
> \* \* \* \* \*
>
> There's an ongoing investigation.  [Mother] has tried to tell the children to change their story. . . . She tried to record [Child] at school.

*Id*. at 64-65, 92, 94 (questions omitted, paragraphing altered).

This Court has stated a child can be found dependent without a factual finding of abuse but based upon a parent's actions or lack of actions upon being informed that a child is abused.  *See In re M.W.*, 842 A.2d 425, 429-30 (Pa. Super. 2004) (upholding trial court's adjudication of siblings of sexually abused child dependent when, after learning of the abuse, Mother continued the relationship with the abuser and allowed him back in the home); *Interest of D.C.*, 2020 WL 360611, at \*7 (Pa. Super. 1/21/20) (unpublished memorandum) (upholding adjudication of dependency based upon Mother's

lack of actions to help or protect child following allegations of sexual abuse);[4] *see also In re R.P.*, 957 A.2d at 1212.

Mother does not dispute the accuracy of Ms. Hudson's testimony. Instead, Mother misstates the record. She attempts to recast this as a dependency adjudication based upon a finding of *abuse* and argues the evidence was insufficient to sustain a finding of abuse and the trial court improperly shifted the evidentiary burden to her to disprove abuse. *See* Mother's Brief at 21-50. Mother's assertion is incorrect. As the trial court specifically noted, *see* N.T., 1/23/24, at 26, DHS did not seek a finding of dependency based upon the allegations of sexual abuse. *See also id*. at 8 (closing argument of counsel for DHS stating DHS is not seeking a finding of abuse but rather that Child is without proper parental care and control). The trial court's finding is supported by the record, and we have found nothing to confirm Mother's claim that DHS sought a finding of abuse or that the trial court based its dependency decision on a finding Child was abused. Moreover, Mother's reliance on the Pennsylvania's Supreme Court's decision in *In the Matter of the Adoption of R.K.Y.*, 72 A.3d 669 (Pa. 2013), and this Court's decisions in *In the Interest of I.R.-R.*, 208 A.3d 514 (Pa. Super. 2019), *In the Interest of J.M.*, 652 A.2d 877 (Pa. Super. 1995), and *In re the Involuntary Termination of Parental Rights of Frank Matsock*, 611 A.2d

---

[4] *See* Pa.R.A.P. 126(b) (unpublished non-precedential memoranda decision of Superior Court filed after May 1, 2019, may be cited for persuasive value).

737 (Pa. Super. 1992) is misplaced. Firstly, both **R.K.Y.** and **Matsock** are not dependency cases but concern the sufficiency of the evidence necessary to terminate parental rights. **See R.K.Y.**, 72 A.3d at 673-81; **Matsock**, 611 A.2d at 742-49. Thus, neither case addresses the sufficiency of evidence necessary to sustain a finding of dependency. Secondly, all four cases concern the sufficiency of evidence necessary to sustain a finding of **abuse**, more specifically, whether a finding of abuse can be sustained when only hearsay evidence was presented to support the abuse allegations. **See R.K.Y.**, **supra** at 677-79; **I.R.-R.**, 208 A.3d at 519-21; **J.M.**, 652 A.2d at 881-82; **Matsock**, **supra**, at 742-45. These cases are inapposite because none of them address the sufficiency of the evidence needed to sustain a finding a child is without proper parental care and control.

At oral argument, counsel for Mother argued strenuously the trial court failed to properly consider the positive visits between Mother and Child and Child's expressed love and desire to return to Mother. Such an argument misstates the record. When questioned on cross-examination about visitation, Ms. Hudson said she was not the proper person to question because she only attended one visit, and the visitation coach, who was present at the hearing, was the proper person to ask. **See** N.T., 1/18/24, at 53-54. Mother did not call the visitation coach as a witness. Ms. Hudson did testify generically that the "children" love Mother and want to return to her. **See id**. at 54, 72. However, when specifically asked whether Child wanted to return to Mother,

Ms. Hudson testified she had interviewed Child the day before the hearing and Child did not want to return to Mother. ***See id***. at 81-82. Therefore, the record does not support Mother's claim that Child wanted to return to her custody.

Accordingly, for the reasons discussed above, we affirm the adjudication of dependency.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 9/05/2024